This is U.S. v. Nesly Loute. I'm not sure I've got that pronunciation. Did I get that okay? Nesly Loute. Loute. Thank you. Before we begin, Mr. Miller, just one or two brief observations for those of you who have not appeared in our court before. First, you may safely assume that as you make your arguments that we've had a chance to fully review the briefs, the record excerpts. In many instances, we've read the record itself. So feel free to go right to the heart of the argument. Second, just comment about our timing and lighting system. You'll note that we have a green, amber, and red light. Green means, of course, you may proceed. Amber is a two-minute warning. And red really means your time is up, and we'd be much appreciative if you could bring your remarks to a conclusion when you see the red light and go on. As one of my colleagues some years ago was fond of saying, the red light's not aspirational. With that, let's begin with the first case, which is U.S. v. Loute. Good morning, Your Honors. Again, Landon Miller on behalf of Nestle Loute, who is the appellate in this matter. Judge, our issues are the multiplicity of the charging document, the indictment, and the impact, pardon me, that we believe it held or had on the jury. In this particular case, the U.S. attorney at the time spoke at length in his opening statements about the three counts that were had over and over and over in his opening statement. And then, of course, when the trial testimony, we were continuously going for three counts. Our position is, first, that the Rule 12 motion should have been granted and the indictment should have been one count because the issues were just one conspiracy. However, that was compounded, we would suggest, to the court by the trial judges granting or sustaining the objections of the government on my client's testimony. So, with respect to the former, you've got sort of two things going on, right? You've got, one, you say you were prejudiced by the references to the three conspiracies, and two, that evidence came in attached to counts two and three. You think that evidence should have been excluded along with the counts. Is that right? Yes, sir. So, with respect to the latter, I mean, I'm sort of wondering if we're like in an invited error land here because, I mean, aren't you the one who both pre-trial and mid-trial said, this is all one big ball of wax, you can't separate them, hard to tell where one can, you know, sort of one supposed conspiracy lets off and the other picks up. So, why wasn't the district court doing precisely what you asked it to do by allowing the evidence in? Your Honor, I think that we asked the district court at the very beginning on the pre-trial motions to limit this to one count, and But in doing so, right, you said, these actually comprise one single criminal scheme, the parties are the same or similar, the acts are the same or similar, and the dates are the same or similar, right? I mean, so the district court said, you're right, so let's put it all in, it's all one big thing. I think the court ultimately did let it in, Judge, but our position is that the entire presentation of the case is that there were multiple conspiracies. It's our position that it should have been just one conspiracy to begin with, but the jury was unduly influenced by the reference to multiple conspiracies. So, yeah, I think I understand that, but you've got sort of an argument A and an argument B. The argument A is, the references to multiple conspiracies prejudice your client. The argument B is, shouldn't have let the evidence in, and I'm sort of talking about B now. I get it that one counter-argument you have is A, prejudiced by the references to the multiple conspiracies, but with respect just to the evidence coming in, the evidence that would otherwise be attached to counts 2 and 3, once you told the district court both pre-trial and mid-trial, it's all the same thing. Why shouldn't all that evidence come in? That's what I'm asking. Judge, I would suggest to the court, we're not necessarily saying it shouldn't have come in. It's the way that it came in through, in front of a jury, that those other counts as it came in, as other counts, influenced the jury to a negative impact to my client. So maybe we're really just talking about A. You're saying, Judge, forget about the evidence thing. Let's just talk about the references to the multiple conspiracies. Yes, sir. And what's the, just so I'm clear, what's the evidence of the prejudice? Are we just sort of speculating here that surely these references must have prejudiced the jury? But what's the evidence of prejudice? Judge, it's always hard to point to any evidence of prejudice. I know that we're in front of the appellate courts on a routine basis arguing these multiplicity or multiplicitous counts. And at some point, even if just for a policy reason, if these cases are never overturned, or the convictions are never overturned, because we appear in most of the cases show that these, yes, it was a multiplicitous count, shouldn't have happened that way, shouldn't have done it, it should have been one conspiracy, but however, we're not going to reverse the conviction anyway. And so we're always here. In part, that arises, right, because courts are trying to prevent what I think we've called the principal danger of multiple multiplicitous counts. They want to say, like, wow, yeah, you're right, this guy shouldn't be sentenced twice for something that is, in effect, the same thing. So let's merge, in effect, the counts into one. And so sort of the supposed unfairness or prejudice results from sort of the curing of the principal problem, right? Your Honor, as I pointed out in my brief, there are two dangers, if you will, of these type of indictments. One, of course, is the double punishment, and we're not talking about that here. But the courts have often found that the other danger is the undue influence on the jury in trying to – but I guess the problem I'm having – I guess I'm having two problems. You went to the district court, if I had it right, and you said, look, this ought to be charged as one conspiracy rather than three. The judge says, okay, it's a single overarching conspiracy covering X to Y date. I'm happy to do that if that's what you want. You understand this – but the evidence bearing on it is coming in. I don't understand how you could turn around later and say the judge made a mistake in doing precisely what you asked him to do. What is it that you wanted him to do that he didn't do? We wanted it to be up front one count, Your Honor. So he gave you one count, albeit it happened after the jury was impaneled rather than before. But having granted you the relief that you sought, where is the mistake? What should he have done differently than that which he did do? Which the court ultimately did, Judge. So he did it too late? Is that the problem? That is our position. That it was fatal error not to grant the relief of converting three conspiracies into one until you got into the trial as opposed to pretrial. That's the essence of the claim? It is, Your Honor, and based upon that indictment going forward as it did with three counts, with the government making arguments to the jury that my client is a really guilty guy. He has three different criminal acts. And that was the theme that the government had throughout the trial, starting with their opening statements. That's where I would suggest that the – that one of the two risks. But our case, it seems to me, is easier for the government and harder for you than all of those other cases that you mentioned. Pierce, for example, and Langford, for example. In those two cases and several others, it went all the way through the jury trial. The jury in Pierce, the jury even came back with a verdict on all of the counts. And then on appeal, they merged them. And still in Pierce, what the remedy was to – they had consecutive sentences there and they sent it back. They affirmed the conviction, which is all you're talking about. And there was a lot more prejudice there because the jury was never told that there's only one conspiracy. In your case, the judge clearly told the jury there's only one conspiracy, notwithstanding what the government said in opening. And the government certainly didn't say that in closing because the judge had already ruled. So in your case, and in addition in Pierce and Langford and all those other cases where the multiplicitous problem was solved, corrected, cured on appeal, all of those cases, it went all the way through trial, through the verdict. And then it was cured on appeal. There's a lot more prejudice in those cases than here. And I would agree with the court. And therefore, our case is a fortiori from those cases and we're bound by the previous case law. We are bound. Your Honor is correct. However, once again, as we look at what impact it may have had on a jury, it's hard to know. But I do know that we're here quite often in front of the appellate courts with the same exact issue, and that is that the government's filing these indictments of multiplicity of counts when it should be just one. And I understand that the law is that it's going to be followed, Judge, but at some point I think this court could find that there was an undue influence on a jury based upon the facts of this case. So just to circle back to where I was earlier, fill in the blank for me. I mean the way I read your brief, you said the jury could have been prejudiced and therefore it was prejudiced. Connect those dots for me. It could have been, but what's the indication either from case law or from the record in this case that there in fact was prejudice other than to say, well, at some point, Judge, you've got to start reversing or there are no teeth to this thing? I'm trying to figure out what the result is. And I think, Your Honors, the last statement is really a summary of our argument. Without talking to a juror, without polling the actual juror to find out what the influence was, if any, we would just never know. Thank you. Thank you, Counsel. And you have, Mr. Miller, reserved five minutes for rebuttal. Good morning. Thank you. Good morning. May it please the Court, Jennifer Karinas for the United States. Just to start off, I want to just talk a little bit about the evidence. It seems that Mr. Miller has conceded that the evidence really isn't an issue. And as we said in our brief, it would be invited error since he received the benefit of arguing all the evidence was one conspiracy that all of it would come in as intrinsic. And I'll move on to the prejudice issue. It is true at some point there could be prejudice to a jury from a multiplicitous indictment. This is not that case. How do you think we evaluate the risk? So Mr. Miller's point is absent polling the jury, how are you going to know? What is it about this case that you think makes clear that prejudice didn't exist? Well, Your Honor, I think that first of all, looking at the cases that Judge Anderson mentioned, Langford and Pierce, this case fits very comfortably within those. Because the counts didn't go to the jury, the jury was properly instructed. We don't want to read out the prejudice part from Langford, which is why we filed the 28-J letter. Because we looked extensively for any cases where a court has granted a new trial solely on the basis of prejudice. We weren't able to find one. The Polizzi case out of the- Not able to find one? No, Your Honor. In the Polizzi case out of the Second Circuit, in that case, the district court did on remand, where the court of appeals had said the counts are multiplicitous and dismissed several of them. There had been 22 counts, I think, of child pornography, or 23. And the court of appeals dismissed or vacated the convictions on 18 of them. And so the district court there said, here we have an issue where the trial was probably twice as long as it otherwise would have been. There was a lot of evidence that came in that was very inflammatory that otherwise wouldn't have come in. So it had specific issues that it looked at that said this could have prejudiced the defendant in this case. And even then, the Second Circuit said, that's not enough. But at least in this court, there has not been a case where- Oh, the district court in those cases set aside the conviction? Is that what you said? The district court, after it was remanded from the Second Circuit where they had vacated 18 of the 23 counts, the district court analyzed the prejudice issue and ordered a new trial. The government appealed. The Second Circuit reversed in that case. And we also cited in the 28-J letter, Your Honor, the Maxwell case out of the Sixth Circuit, because there the court deals with an almost identical argument here where the defendant said, I was prejudiced just because by the mere recitation of the multiple counts, I was prejudiced because the jury probably thought that I was worse than I actually was because I was charged with more crimes. And the court rejected that and said, if that were the standard, the exception would swallow the rule in every case where there was a multiplicitous indictment. That case is more prejudicial than this one because in this case, the jury was told finally, and I'm sure in the closing arguments, the arguments were made there was only one. That's correct, Your Honor, and was properly instructed about that as well. And there were no objections about the jury instructions. And I just want to go back to the Pierce case because the Pierce case also addresses the prejudice to some extent and also rejects that there is this notion of sort of a freestanding prejudice. I think this court's decision in Williams is instructive. I think if you read the Langford standard in the Williams case, and I believe that's cited in our brief, but I can find the site for that. In any event, the Williams case went on to say not only is there the risk of double punishment or multiple punishments for one offense, there's also the risk of prejudicing the jury, and then goes on to say, and therefore, there's a risk of the defendant being convicted of multiple counts. So there, I think it ties the prejudice to the risk of being convicted of multiple counts because it always goes back to double jeopardy. That's what the multiplicity concern is, is double jeopardy. So there's really not this freestanding theoretical notion of prejudice other than a case perhaps like Polizzi where you might find something at the margins where it's so extreme and there's so much evidence that wouldn't have come in. But if the standard was we're going to presume prejudice whenever counts are found multiplicitous, the same thing would be happening in the Rule 29 context. If the court were to grant a judgment of acquittal as to some counts, then the defendant could say, well, I was prejudiced because the jury heard all of those counts, and so now they think that I was a worse person than I was. Even though you've granted my judgment of acquittal, just the fact that you said I was accused of all these things has somehow prejudiced the jury against me. We have to presume that the jury is properly instructed and that they follow those instructions. So the rule in this case, there may be an outlier out there. There may be a case like Polizzi where there's sufficient prejudice just from the recitation of the counts, but this is not that case. I'm curious, looking at this indictment, looking at the superseding indictment, the first count in the very first paragraph mentions all of the chiropractic clinics, all four of them. And then when it gets to the manner and means of the conspiracy in 8A, it focuses just on Tamiami and first choice. That's right. Suggesting that the heart of the charge here really concerned two of these clinics rather than all four. Then in count two, the organizational structure is the same, but the focal point in the manner or means, that's 11I in the superseding indictment, the focus is on Parkway and Collier chiropractic rather than Tamiami and first choice. The scheme was creating, opening, and running in a false and fraudulent way Parkway and Collier. And then you get to count three, and there when you get to manner and means, we're just talking about a singular chiropractic health clinic, Immokalee Pain in Immokalee, Florida. So there are a couple mentioned in count one, although admittedly in the very initial introduction you referenced them all. Would it have been error, and you'll see where I'm going with my question because I'm asking it this way, would it have been error for the court to have denied the motion to dump two of the counts and say, no, these are three arguably separate conspiracies because they involve schemes or artifice to defraud and mail fraud zeroing in on different clinics. Would that have been error? Your Honor, you mean at the close of evidence when- Yeah. No, Your Honor, and we don't concede that that ruling was correct. It's not an issue. Did you argue in the district court, Judge, wait a minute. We don't think there's a multiplicity problem here. There are three separate conspiracies involving different sets of clinics. Admittedly, the means are the same, but the mailings are different, and the agreements went to different clinics. We did make that argument, Your Honor. He rejected it. He did reject it? If he had not rejected it and said, no, I disagree with the defendant, and I think that you can proceed with three because that's where the grand jury charged it, you might well have proceeded with one, but you chose to go with three, and it's arguable that there are three, although they overlap. That would not have been error. No, Your Honor, we don't think it would have been error. And again, we don't concede that that ruling was correct, and we argued that it wasn't correct. Mr. Loud is at the head of the entire operation. Under the mail fraud and the conspiracy to commit mail fraud statute, it's appropriate to charge each agreement separately. There was overlap, and the evidence at trial showed a little bit more overlap perhaps than was apparent from the face of the indictment. I really think that you can view it either way, that these three different clinics, slightly different time periods, different paper owners, although Dr. Webb was the paper owner of two, that there was some discrete actors and time periods, but it seems like the manner and means of the conspiracies at trial, the evidence showed that all of the clinics operated in a similar fashion. So it is one- The reason I raise it is when I was looking at the time frames of the conspiracy, as to count one, you say that I'm talking about paragraph seven in the indictment, charges that the conspiracy began by at least June of 2013 and continued through in or about February 15th. That's the fraud going to Tamiami and First Choice. Then when you get to count two, the time frame is different. Ironically, the time frame is broader on count two because of the time the clinic operated, but there it's October 12th to February 15th relating to Parkway and Collier. Then on count three, the time frame is still different than it was either in count one or count two. That time frame ran from June of 14 until February 15th. So the time frame is the shortest for the last one, and they were arguably overlapping but different players depending on which of the three sets of clinics you were looking at. That's right, Your Honor. But again, we view all of this evidence, as Mr. Laud did, as intrinsic. It's all inextricably intertwined so that the jury could consider all of it, and that includes, as it says in the introduction to the indictment, all of the clinics. But again, the jury is properly instructed that it's only to consider Mr. Laud's guilt as to count one, and we can assume that they did that. There was overwhelming evidence as to Mr. Laud's guilt on count one. But the one thing that might have been confusing is that the time frame was different because the time frame on count one was only June of 13 to February 15, whereas the time frame is broader on the second count. There it's October 12 to February of 15. It is broader. There's a certain irony in the sense that no good deed goes unpunished in the world. Perhaps this case is evidence of just that. Your Honor, the judge could have merged the counts. That's also something that happens in these multiplicity cases. In the end, I don't think that it – When you say merge the counts, he could not have recrafted count one, though, to say that the time frame ran from – picking up the language in count two. He could not have recrafted count one to say it ran from October of 2012. No, Your Honor, that's true, and I think that's probably why he vacated the two of them and just focused on that one. But again, the jury was instructed you can only consider count one. The evidence on count one was very strong. The evidence as to the other clinics was intrinsic and was part of the whole conspiracy so the jury could consider it. But in the end, the jury was instructed properly to only consider count one, which includes that time period. Right, but the fraud itself in count one went to two clinics, Tamiami and First Choice. Right. Even though you had an introduction where you referenced all of the clinics, the crime in count one is to illegally conspire to violate the mail fraud statute with respect to Tamiami and First Choice between June of 2013 and February of 2015. You say it's intrinsic as part of the same scheme, but if the time frame is not the same, I'm not sure that that's clearly intrinsic. Well, Your Honor, a couple of things. First of all, Mr. – What I'm suggesting to you is you may actually have three separate conspiracies, which the judge consolidated into one, but the one, the time frame was definitely different. Right. And the critical allegata was that the clinics are different in count one than they are in count two, and they're still different from what they are in count three. It appears that what the court did after – when Mr. Laut argued that this was one big conspiracy and that all the evidence was inextricably intertwined, it appears the court then said we're going to dismiss counts two and three, but because you, Mr. Laut, argued and got the benefit of arguing that this is one conspiracy, we're going to let the government argue that this is one conspiracy. All of the evidence comes in, and that's what the government did. There was no objection. There are many opportunities for him to have objected to that evidence or the phrasing of count one. He never did that. In fact, when the court read the jury instructions saying you consider all of the evidence, he stated expressly, I don't object. Let me ask my question slightly differently. Sure. To the extent there was evidence that came in with respect to count two, Parkway and Collier, and that evidence concerned what happened between October of 2012 and June of 2013, that eight- or nine-month period of time. Would that evidence have been extrinsic or intrinsic? Your Honor, it would have been intrinsic to the overarching conspiracy with Mr. Laut as the common thread. If the case was retried, that would come in, I would say, as intrinsic evidence, if not certainly as 404B evidence, Your Honor. That was not instructed here. That was not requested here. But we would say that that's still intrinsic to the overall conspiracy. Thank you. You, Van. Just to kind of put the bow on this, this gets back to I think where I started the questioning of your adversary. It seems to me the reason that I think we may be in invited error land is because the pre-trial motion and the mid-trial motion together, filed by Mr. Laut, use all of the relevant buzz phrases that we just talked about. Same scheme. Parties are same or similar. Acts are same or similar. States are same or similar. Facts and circumstances are so inextricably intertwined. That just seems to like tag every 404B slash intrinsic evidence buzz phrase that we have. That's exactly right, Your Honor, and that's our argument. I realize I've been saying Mr. Laut throughout in its loot, and I apologize for the mispronunciation. Thank you very much. I see my time is up. Thank you. Unless there's questions of me, I will waive. I do. I just have one. This is a problem. It comes up every time there is a broad conspiracy that covers many players over an extended period of time. Here you have a circumstance where it seems to me the dates are overlapping but not coextensive. As I said, you get slightly different time frames for each of the three counts. The broadest time frame, ironically, being in count two. And you have overlapping players but not coextensive. There are some different players, but at the heart of this you have loot. And so as if we see this much more commonly in drug conspiracies where we talk about spoke and wheel, and at the pivot you have, let's say, the main guy, Mr. Big, and he's involved in a distribution method in many places over an extended period of time, and he's dealing with one group at one time and another group at another time and a third group. But there's no question that if you look at him, there's a single overarching conspiracy. But if you're looking at the other end of the spoke, maybe the conspiracy is disparate. The trouble that I'm having is to see how you were harmed in any way by any of this. It seems to me that you got an advantage that you might not have been otherwise entitled to, that the court would have been perfectly within its power to reject your claim and take it up as three separate conspiracies rather than one. Or it seems to me he could have done it the way he did it. I'm not sure that it really made any difference here because it's kind of overlapping but not exactly coextensive. Where's the harm in him having done what you wanted? If the evidence would have come in anyway, whether you characterize it as a single or a multiple conspiracy, it seems to me you got an advantage here, and this is where I started out earlier. I'm not sure that I understand what your complaint can fairly be with what the trial judge did, going beyond that it was invited. Again, Your Honor, as I said before, the harm is, I would argue, is the harm that it was caused to the jury beginning with how many counts were held or being tried against Mr. Williams. So they could have come away with the inference that he's really a bad guy because there are three conspiracies here, even though only one is going to the jury. And he's involved. But if there arguably were three conspiracies, where's the prejudice? If indeed the district court could have rejected precisely what you asked for, on the theory that we were just talking about, there really were arguably three conspiracies, then you're none the worse for wear, are you? If there were three conspiracies, no. We would not be any worse for wear. Thank you very much. I noticed, Mr. Miller, that you were court appointed, and we very much appreciate you taking on the burden of representing your client in this case. We will proceed to the next case, which is the United States v. Ernest Vereen.